IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**THOMAS EDWARD CAMPBELL  # 62117**                                                      **PLAINTIFF**

**VS.**                                                      **CIVIL ACTION: 3:17cv184-TSL-RHW**

**CAPTAIN CHRISTOPHER DYKES,** *et al.*                                                      **DEFENDANTS**

### REPORT AND RECOMMENDATION

Before the Court is [51] a motion for summary judgment filed August 30, 2018 by Defendants Christopher Dykes, Lemarcus Ruffin, Lamondia Hardaway, Norris Hogans and Tony Donald[1] in this *pro se* prisoner civil rights lawsuit.  On October 9, 2018, Plaintiff filed [55] his response to the motion, and the matter is ripe for ruling.

Facts and Procedural History

Thomas Edward Campbell filed this lawsuit while he was a Mississippi Department of Corrections (MDOC) inmate at East Mississippi Corrections Facility (EMCF) serving four sentences totaling twelve years for convictions including sexual battery and two sales of methamphetamine.[2]  Campbell has since been released from prison.  All Movants are correctional staff employed by Management & Training Corporation at EMCF during Campbell's incarceration there.

Campbell's complaint, filed March 20, 2017, alleges Defendants violated his Eighth Amendment rights by failing to protect him from assault by fellow inmates at EMCF.

---

[1]Movants are the only Defendants remaining in the case.  The District Judge dismissed the complaint as to Defendant Case Manager Terrance Kelly as frivolous and failing to state a claim upon which relief could be granted [12], dismissed the complaint as to Defendant Harold Mobley for failure to prosecute [42], and granted summary judgment and dismissed Defendants Marshall Fisher and Anthony Compton [59].

[2]The MDOC web site identified only three of Campbell's convictions.

Specifically, Campbell claims that on October 19, 21 and 25, 2015 inmate Jerome Kelly sexually assaulted him and threatened his life if he told anyone about it. Campbell asserts Kelly is a Gangster. Campbell further alleges that on October 29, 2015, inmate Kendrick Keys stabbed him in the head at Kelly's behest. On that date, according to Campbell, Kelly saw him speaking to a maintenance man and thought Campbell was reporting the sexual assaults and Kelly told Campbell he would get him for doing so. Campbell went into Kelly's cell to tell Kelly his conversation with the maintenance man had nothing to do with the assaults but was instead about a water problem in Campbell's cell. When Kelly indicated he understood, Campbell walked out of Kelly's cell and was immediately attacked by Keys. Campbell testified he did not know Keys was going to assault him before it happened; that he had never had any problems with Keys before,[3] and he has had no problems with either Kelly or Keys since the incidents. [51-1, pp. 24, 29] Campbell contends corrections officers should have known Keys was going to assault Campbell because Keys "strapped on a knife" out in the dayroom where there are cameras and officers should have been watching the cameras. [51-1, pp. 14-16] Campbell admits the guards did not hear Kelly threaten him before Keys stabbed him. [51-1, p. 17]

Campbell requested medical attention on October 30, 2015, stating he hurt his head when he had a seizure and fell, and that he had also broken his cane. Medical personnel who saw him on October 31, 2015 recorded that Campbell stated he had a seizure[4] on Thursday (October 29) and fell and hit his head on the stairs and broke his cane. Campbell had swelling to the back of his head and a small cut over his left eye which was treated with steri-strips. [51-3] Campbell admitted he told no one about the assaults until November 3, 2015. [51-1, p. 28] He was moved

---

[3] Campbell testified he actually helped Keys sharpen his knife. [51-1, p. 29]
[4] Campbell's prison records indicate he previously had apparent seizures on January 28, 2015, February 6, 2015 and February 11, 2015. [51-8, pp. 2-3]

from housing Unit 1 where the assault occurred to Unit 6 on November 4, 2015. The sexual assault allegations were referred to Warden Rice for further investigation and ultimately deemed unfounded "due to the lack of sustainable evidence."[5]

Campbell testified he sued Warden Hogans because Hogans did not respond to his correspondence dated December 27, 2015 and January 2, 2016 about his fear of Gangsters at EMCF and his desire to be transferred to another facility. [1-1, pp. 22, 23], [51-1, p. 26] He sued Captain Dykes because when he told Dykes about the assaults, Dykes placed him in administrative segregation in a restricted housing unit for approximately a month before returning him to general population. [51-1, pp. 23-24], [51-2] He sued Lamondia Hardaway for failing to put red tags on Kelly and Keys in June 2016, several months after their alleged assaults on Campbell. [51-1, pp. 19-20, 26]

Campbell testified he sued Captain Donald and Investigator Ruffin because they got him to sign a waiver for protective custody in April 2016 following Campbell's submission of a December 2015 grievance requesting transfer to another facility; Campbell alleges the officers told him they would get him transferred to another facility, but he later learned he could not be transferred until he was RVR-free for six months. [51-1, p. 18] According to the affidavit of Tony Donald, unit manager for housing Unit 6 where Campbell was housed, Campbell has reported no security or safety concerns to staff since being moved to 6-A; none of the inmates listed on Campbell's keep separates list[6] are currently at EMCF; inmate Kelly was housed on 1-B, and Keys on 1-A. Donald states inmates on Unit 6 have no physical interaction with inmates on Unit 1 unless they happen to be in the medical department at the same time, and since both

---

[5] When LeMarcus Ruffin questioned Campbell about the matter, Campbell stated he had not written an ARP and was unsure what Ruffin was talking about. [51-4, p. 8]

[6] Neither Kelly nor Keys was on Campbell's keep separates list. [51-7, pp. 2-3, 9]

Unit 1 and Unit 6 are classified close custody, inmates housed in those units are escorted by an officer whenever they are outside their assigned housing unit. Donald also notes that none of Campbell's institutional records[7] contain any report of the assaults he alleges in his complaint. Donald and Investigator Ruffin met with Campbell on April 4, 2016, and Donald met with him again on April 19, 2016, and at neither time did Campbell voice complaints/concerns regarding his safety/security; he wanted to be transferred but gave no particular reason for the request. Donald forwarded the transfer request to Campbell's mental health counselor. [51-7] Campbell alleges he met with Donald and Ruffin on August 9, 2016 and requested protective custody following an assault by inmate Ricky Dalton a few days earlier. He claims the request was denied because he had signed the protective custody waiver. [1, p. 6]. [1-1, p. 55]

On August 18, 2016, Campbell alleges claims inmate Dante Buse and three other inmates came into his cell and beat him and burned his hand, Campbell believes this occurred because he had quit paying extortion fees to Buse. [51-1, pp. 30-31] On August 19, he claims an inmate known as "Little O" choked him out and when he awoke, Little O was masturbating over him. Campbell believes Little O acted at Buse's request. Campbell admittedly had never previously told EMCF staff he had any problems with Buse or Little O before these incidents. [51-1, pp. 30-32] Campbell was moved to a different housing unit on August 19, 2016, the same day he reported the incidents to officials. [1-1, pp. 60-61], [51-2, p. 2]

Summary Judgment Standard

Under FED.R.CIV.P. 56 summary judgment is required where there is no genuine dispute as to any material fact and movants are entitled to judgment as a matter of law. A genuine

---

[7] These records include Campbell's incident report records from the pertinent time and his running record which includes notes from meetings with his case managers, all of which are attached as exhibits to Donald's affidavit. [51-7, p. 2]

dispute of material fact exists "only where a reasonable jury could look at the evidence and return a verdict for the non-movant." *Johnson et al. v. Thibodeaux City et al.*, 887 F.3d 726, 735 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). On a motion for summary judgment, the Court must view the evidence and draw reasonable inferences most favorable to the non-moving party. *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). Factual controversies are to be resolved in favor of the non-movant "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Amerson v. Pike County, Miss.*, No. 3:09cv53-DPJ-FKB, 2012 WL 968058, *2 (S.D. Miss. Mar. 21, 2012) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). The burden of proof at the summary judgment stage rests on the party who has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

Parties moving for summary judgment must identify those portions of the pleadings and discovery on file and any affidavits they believe demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once movants carry that burden, the non-movant must show summary judgment should not be granted, a burden he cannot meet by resting upon mere allegations or denials. The non-movant must set forth specific facts showing a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which show the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (one opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir.

1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations of the moving party with specific, factual disputes; mere general allegations are not a sufficient response."). *See also*, *Duffie v. United States,* 600 F.3d 362, 371 (5th Cir. 2010). If the party with the burden of proof cannot produce evidence on an essential element of his claim, summary judgment is required. *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990). The Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air*, 37 F.3d at 1075. Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, will not suffice to create a real controversy regarding material facts. *Johnson v. Bernstein*, 547 F. App'x 412, 413 (5th Cir. 2013) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc*., 14 F.3d 1082, 1086 (5th Cir. 1994).

## Law and Analysis

A prison official's failure to protect a prisoner from attack by fellow inmates may constitute cruel and unusual punishment in violation of the Eighth Amendment under some circumstances, but not "every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825. 832-834 (1994). Prison officials are charged with protecting prisoners from known excessive risk; they "are not ... expected to prevent all inmate-on-inmate violence." *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). The deliberate indifference standard applies to prisoners' claims of failure to protect. *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). To state a cognizable claim for failure to protect under 42 U.S.C. § 1983, Campbell had to present facts showing he was "incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to

his need for protection." *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). A prison official acts with the requisite deliberate indifference if the official is aware of an excessive risk to inmate safety and disregards that risk. *Longoria v. Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006); *see also Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. at 837, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Mere negligent failure to protect is not actionable under § 1983, nor is deliberate indifference established by an official's failure to alleviate a significant risk that the official should have perceived but did not. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference is "an extremely high standard to meet." *Id*. *See also, Sanders v. Cabana*, 2007 WL 922287 (N.D. Miss. March 26, 2007) (finding official's failure to immediately process a red tag against inmate who subsequently attacked plaintiff insufficient to state a § 1983 claim).

In light of the above authority, the undersigned finds Captain Dykes and Case Manager Lamondia Hardaway are entitled to summary judgment because Dykes' placing Campbell in administrative segregation implicated no constitutionally protected liberty interest, Hardaway's failure to process red tags against Kelly and Keys some eight months after the October 2015 incidents amounted to no more than negligence, and Campbell alleged no physical injury resulting from these actions – he testified he had no further problems with Kelly or Keys. Prisoners have no constitutionally protected liberty interest in a particular housing assignment. *See Nathan v. Hancock*, 477 F. App'x 197, 199 (5th Cir. 2012) (no liberty interest is implicated by a prisoner's change in custody status, placement in segregation or lockdown and consequent

restrictions on privileges). Liberty interests protected by the Due Process Clause are "generally limited to freedom from restraint which … imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995). *See also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (no protected liberty interest in housing at a particular prison facility); *Nash v. Wilkinson*, 124 F. App'x 254, 255 (5th Cir. 2005) (no liberty interest in housing assignment). With respect to the absence of physical injury see *Jones v. Greninger*, 188 F.3d at 326; and *Castellano v. Treon*, 79 F. App'x 6, 7 (5th Cir. 2003) (prisoner's failure to protect claim dismissed as frivolous in light of concession that he suffered no physical injury).

Campbell's claim that Hogans did not respond to his correspondence fails for the same reasons that his claims against Defendants Fisher and Compton were dismissed. Campbell has presented no authority holding that prison officials are constitutionally bound to respond to inmates' correspondence. The single-paragraph letters Campbell attached to his complaint give no specifics; stating only that he fears for his life at EMCF "by the gansters (*sic*)." [1-1, pp. 22-23] Even assuming Hogans received the letters, "A prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the inmate." *Williams v. Management & Training Corporation*, 2017 WL 8793429 , at *3 (S.D. Miss. November 2, 2017) (citing *Coleman v. Tanner*, 2010 WL 2009445, at *9 (E.D. La. April 27, 2010)). "[I]t would be an unreasonable interference with prison administration to rule that Defendants had a duty to house Plaintiff at a facility of his choosing based on his generalized fears." *Williams*, 2017 WL 8793429, at *3 n.4. If Campbell intended to charge Hogans with inadequate investigation of matters raised in his letters, the claim still fails. See *Dehghani v. Vogelgesang*, 226 F. App'x, 404, 406 (5th Cir.

2007) (allegation that warden failed to adequately investigate grievance did not amount to a constitutional violation); *Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006); *Woodland v. City of Vicksburg*, 2006 WL 3375256, at *3 (S.D. Miss. Nov. 21, 2006) (claim for failure to investigate did not amount to a constitutional violation). Since an inmate has no federally protected liberty interest in having a prison grievance investigated or resolved to his satisfaction, he suffers no constitutional violation if his grievances are not answered. *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005); *Jones v. Shabazz*, 2007 WL 2873042 at *21 (E.D. Tex. Sept 28, 2007); *Mahogany v. Miller*, 252 F. App'x 593, 594-95 (5th Cir. 2007).

The above authority also applies to defeat Campbell's complaints against Captain Donald and Investigator Ruffin for failing to place him in protective custody or have him transferred to another facility in April 2016. His statements of generalized fear of other inmates is insufficient to undergird a finding of deliberate indifference, and he had no constitutional right to be housed at a particular prison facility. Campbell himself testified subsequent attacks by fellow inmates arose from separate events unrelated to the October 2015 incidents – he stated Buse attacked him in August 2016 because he quit paying Buse extortion fees; that Little O attacked him at Buse's behest; and that he had never reported to any EMCF officials any prior problems with Buse and Little O. *See Williams*, 2017 WL 87933429, at *3.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Christopher Dykes, Lemarcus Ruffin, Lamondia Hardaway, Norris Hogans and Tony Donald be granted summary judgment, and this case, dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

After being served a copy of a Report and Recommendation, a party has 14 days to serve on the other parties, submit to the assigned District Judge, and file with the clerk of court his written objections to the Report and Recommendation. The objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Court need not consider frivolous, conclusive, or general objections. Except on grounds of plain error, a party cannot attack on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not timely file objections. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed this the 18th day of March 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE